Filed 4/26/21  In re Ashley R. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ASHLEY R., a Person Coming Under the Juvenile Court Law. | B308754 (Los Angeles County Super. Ct. No. 20CCJP04168) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. FRANCISCO R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robin Kessler, Judge Pro Tempore.  Affirmed.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Francisco R. (Father) appeals from the juvenile court's assertion of jurisdiction over his daughter Ashley R. under Welfare and Institutions Code[1] section 300, subdivision (b)(1), as well as the subsequent dispositional order removing her from Father. The juvenile court found that Father's substance abuse created a substantial risk of serious physical harm to Ashley. Father denies that his substance use rises to the level of abuse necessary to exert jurisdiction and remove Ashley from his care. He also argues that the removal order was improper because the Department of Child and Family Services (the Department) did not make or document any reasonable efforts to prevent removal, and the juvenile court did not consider other available means that could have protected Ashley.

We affirm the juvenile court's orders. The record, which includes Father's admission of regular methamphetamine use for at least two years, supports the juvenile court's finding that Father had a substance abuse problem. Additionally, the juvenile court did consider whether means other than removal could have adequately protected Ashley from Father's substance abuse, and properly determined that removal was necessary.

_____

[1] Subsequent undesignated statutory citations are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Family

Father had one daughter, Ashley, with Maria O. (Mother) in 2006.  When Ashley was two years old, Mother abruptly left the family home.  At that time, Ashley went to live with Father in the paternal grandmother's home.  Mother attempted to reclaim Ashley a year-and-a-half later, but Father ultimately won full custody.  Neither Ashley nor Father have had further contact with Mother.

In 2016, Father began living in Mexico.  While he was gone, Ashley continued to live with her paternal grandmother.  Father returned in October of 2019, and moved back into the family home.

### B.    Initial Petition for Jurisdiction as to Mother

On July 30, 2020, the Department received a report that Mother had tested positive for amphetamine after giving birth to her youngest daughter, H.R.[2]  H.R. later tested positive for amphetamine.

On August 7, 2020, the Department filed a section 300 petition alleging jurisdiction over Ashley and her half-siblings, Andrew and H.R., on two counts.  Count b-1 alleged that Mother's drug use caused H.R. to be born with amphetamine in her system, unreasonably exposing her to serious physical harm.  Count b-2 alleged that Mother's history of substance abuse rendered her incapable of adequately supervising and protecting the children.

---

[2] Mother also has another child, Andrew B., born in 2010.  Mother, Andrew, and H.R. are not parties to this appeal.

At the detention hearing on August 12, 2020, the juvenile court detained Ashley from Mother, and released her back to Father's custody. The Department was ordered to assess case closure for Ashley.

## C.    First Amended Petition for Jurisdiction as to Father

When a social worker initially contacted Father on August 4, 2020, he denied any drug use or criminal history, and agreed to take a drug test the next day. However, he failed to return any of the social worker's calls to arrange the test.

On review of Father's criminal history, the social worker discovered he had a 2008 misdemeanor conviction for possession of a controlled substance; a 2015 felony conviction for possession of marijuana for sale, which was later reduced to a misdemeanor after Father completed probation; and a 2016 felony conviction for carrying a dirk or dagger.

When asked whether Father used any substances, the paternal grandmother denied ever seeing Father drink alcohol or use drugs.

The Department later learned that Father had a history of methamphetamine use. When confronted with this during a subsequent interview on September 9, 2020, Father claimed he had been "clean and sober" for two years. He admitted he continued to use marijuana to regulate his sleep and alleviate back pain.

Father submitted to a drug test on September 15, 2020, after he got off from work. He tested positive for 6321 nanograms per milliliter (ng/ml) of methamphetamine, 1686 ng/ml of amphetamine, and 769 ng/ml of marijuana. Additionally, his blood alcohol level measured 0.04. After receiving the test results, Father admitted to a social worker that he had used

4

methamphetamine "at least" once a month for two to three years. He also stated that he smoked marijuana three to four times a week and drank alcohol twice a week. Father told the social worker that he knew that he "messed up," that he had "a problem," and that he was willing to do anything it took to get sober. He agreed to move out of the family home that day to ensure that Ashley could remain in the family home. Later that day, the paternal grandmother reiterated that she did not know that Father was using drugs.

On September 28, 2020, the Department filed an ex parte application to alter the court's prior detention order, pursuant to section 385. The Department recommended that the juvenile court terminate its prior order releasing Ashley to Father's custody, and instead place Ashley in the custody of her paternal grandmother. The juvenile court granted the application on October 2, 2020.[3]

Father took a second drug test on October 13, 2020. He tested positive for 350 ng/ml of marijuana, but tested negative for methamphetamine and other substances.

On October 19, 2020, the Department filed a first amended section 300 petition.[4] In addition to the two counts concerning Mother, the amended petition alleged jurisdiction over Ashley

_____

[3] In this and subsequent orders, references are made to Ashley's placement "in Shelter Care under the supervision of [the] Department." However, the reporter's transcript indicates that Ashley remained in her paternal grandmother's home throughout the proceedings.

[4] This petition was later interlineated to reflect a settlement between the Department and Mother. Father's count b-3 was unaffected.

5

pursuant to section 300, subdivision (b)(1), based on Father's substance abuse.  Count b-3 alleged that Father "has a history of substance abuse and is a current abuser of methamphetamine and amphetamine which renders . . . [F]ather incapable of providing [Ashley] with regular care and supervision . . . endanger[ing] the child's physical health and safety and plac[ing] the child at risk of serious physical harm."  The Department did not prepare a separate jurisdiction report regarding these allegations.

## D.    Jurisdictional and Dispositional Hearing

On November 6, 2020, the juvenile court held a combined jurisdictional and dispositional hearing to consider the allegations in the first amended petition.  During the hearing, Father's counsel suggested that Father's drug use did not rise to the level of substance abuse warranting dependency jurisdiction, especially since Father had tested negative for methamphetamine three weeks prior to the hearing.  Father's counsel also argued the Department could not demonstrate any nexus of harm to Ashley.

The juvenile court found that the number of drugs present in Father's system in "substantial" amounts at his first drug test, together with his admission that his regular drug use was a problem, indicated a serious substance abuse problem that posed a substantial risk to Ashley's safety.  The juvenile court noted that Ashley "had only been in [Father's] care for a short period of time when the testing happened," and that it did not have to wait until the child was actually harmed by Father's substance abuse to exert jurisdiction.  Accordingly, the juvenile court sustained

6

count b-3, and asserted jurisdiction over Ashley under section 300, subdivision (b)(1).[5]

Next, the juvenile court found by clear and convincing evidence that removal from Father was necessary. Father's counsel argued that Father should be allowed to return to the family home and resume custody of Ashley. His counsel maintained that other relatives living in the home, including the paternal grandmother, could protect Ashley now that they knew about Father's substance abuse. The juvenile court rejected Father's argument, stating that it "[found] it difficult to believe they had no idea he was using." The court further noted that Father "tested positive for alcohol at a .04 sometime in the middle of the day knowing that he had to drug test," raising further concern that the other family members "knew, but did not protect themselves."

Ashley was placed with her paternal grandmother. The juvenile court ordered monitored visitation with Father, to be modified to unmonitored visits in the family home once he had four consecutive clean drug and alcohol tests.

Lastly, over Father's objection, the juvenile court ordered Father to participate in a full drug and alcohol program for a minimum of six months, random counseling, a 12-step program, and individual counseling. The court also ordered the Department to conduct unannounced visits to ensure compliance with the case plan.

Father timely appealed.

---

[5] Pursuant to the Department's settlement with Mother, the court dismissed count b-1, but sustained an amended count b-2 as to Mother.

7

## DISCUSSION

### A.    Appellate Jurisdiction

Father alone appeals the jurisdictional and dispositional orders issued in this case.  The failure of both parents to appeal a finding of jurisdiction requires that we ensure appellate review is appropriate.

Dependency jurisdiction under section 300 is over the *child*, not *the parents*, as a result of the harm or risk of harm to the child.  (See, e.g., *Kern County Dept. of Human Services v. Superior Court* (2010) 187 Cal.App.4th 302, 310.)  Because the juvenile court assumes jurisdiction over the child, not over the parents, jurisdiction may exist based on the conduct of one parent alone.  (See § 302, subd. (a); *In re John S.* (2001) 88 Cal.App.4th 1140, 1143.)  "For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence."  (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

However, we may exercise our discretion and reach the merits of a single parent's challenge to any jurisdictional finding when the finding serves as the basis for dispositional orders that are also challenged on appeal.  (See, e.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 454.)  Father contends this principle applies in this case, and we agree.  He also argues the outcome of this appeal is the difference between a finding that he is an "offending" parent versus a "non-offending" parent.  Such a distinction may have far reaching implications with respect to future dependency proceedings in this case and Father's parental rights.  We have exercised our discretion to reach the merits of a single-parent appeal for this reason before, and we do so here. (See, e.g., *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.)

8

**B.     Substantial Evidence Supports Dependency
     Jurisdiction over the Child**

1.     *Applicable Law and Standard of Review*

"Section 300, subdivision (b), allows a child to be adjudged a dependent of the juvenile court when '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse.' " (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215; see § 300, subd. (b)(1).)

"[T]here are three elements for jurisdiction under section 300, subdivision (b), namely, (1) neglectful conduct or substance abuse by a parent in one of the specified forms, (2) causation, and (3) serious physical harm to the child, or a substantial risk of such harm." (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724-725.)

In deciding whether there is a substantial risk of serious physical harm, courts evaluate the risk that is present at the time of the jurisdiction hearing. (*In re Christopher R., supra*, 225 Cal.App.4th at pp. 1215-1216.) "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) Thus, "[a] parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citation]." (*In re Christopher R., supra*, 225 Cal.App.4th at p. 1216.)

9

We review the trial court's jurisdictional findings for substantial evidence. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) Under this standard, " 'we must uphold the . . . [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support [them].' " (*Ibid.*)

2. *Discussion*

Father argues that substantial evidence does not support the juvenile court's jurisdictional findings, namely, that Father abused substances and that any drug use harmed, or risked harm, to Ashley.

We disagree. It is true that dependency jurisdiction "must be based on substance *abuse*; mere substance *use* is not sufficient for jurisdiction. [Citation.] However, the law is not in agreement on when substance use reaches the point of substance abuse." (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046, citing *In re Drake M.* (2012) 211 Cal.App.4th 754, 764.) Despite this lack of agreement, as we explain, the facts support the juvenile court's assertion of jurisdiction based on Father's admitted methamphetamine use and positive drug test.

After equivocating about his past and present drug use, Father tested positive for methamphetamine, amphetamine, and marijuana. During the jurisdictional hearing, the Department's counsel characterized Father's drug test results as "extremely high," and the juvenile court characterized the amount of drugs in his system as "substantial." Father did not dispute these comments about the quantity of drugs in his system. Only after the results were received did he admit to using

10

methamphetamine at least once a month for two to three years, in addition to weekly marijuana and alcohol use. This longstanding and regular drug use provides substantial evidence to support the trial court's finding of substance abuse. (See *In re Christopher R., supra,* 225 Cal.App.4th at p. 1218 [finding the mother's repeated use of cocaine, including while she was pregnant, was indicative of substance abuse]; cf. *In re L.C.* (2019) 38 Cal.App.5th 646, 652 [evidence that the parent used methamphetamine seven times during a period of 10 months was insufficient to support allegations of substance abuse].) This conclusion is further supported by Father's criminal history, which includes a 2008 misdemeanor conviction for possession of a controlled substance, and a 2015 felony conviction for possession for sale of marijuana. (See *In re Christopher R., supra,* at p. 1218 [noting that "recurrent substance-related legal problems" can be indicative of abuse].)

Despite a finding of parental substance abuse, "it does not always follow that such a finding means that the parent or guardian at issue is unable to provide regular care resulting in a substantial risk of physical harm to the child." (*In re Drake M., supra,* 211 Cal.App.4th at p. 766.) A juvenile court also must find that the parent's substance abuse would cause a substantial risk of physical harm to the children. (*In re Rebecca C., supra,* 228 Cal.App.4th at pp. 724-725.)

Additional evidence supports the juvenile court's finding that Father's substance abuse gave rise to a substantial risk of physical harm to Ashley. Father initially denied any use of illegal substances, and then claimed he had stopped using substances and had been clean for two years. When confronted with his drug test results, he admitted he had regularly used

11

drugs for years.  He claimed to appreciate the risks posed by his substance abuse, readily agreeing to move out of the family home while he "got help" for his substance abuse "problem."

However, during the adjudication hearing just six weeks later, Father asserted that he had "already resolved" his substance abuse issues, even though he had not participated in any drug treatment services and had tested positive for marijuana three weeks prior to the hearing.  Father argued that he should not have to attend any kind of sobriety support program, and should be allowed to continue using marijuana to regulate his sleep and back pain.  The juvenile court reasonably concluded that Father's initial denial of a drug abuse problem, his unsubstantiated claim that the issues were "resolved," and his failure to acknowledge the need for treatment created a substantial risk of physical harm to Ashley.  (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"]; see also *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284 [finding a substantial risk of physical harm by exposing the child to the parent's substance abuse, " 'thus impliedly approving such conduct and even encouraging [the child] to believe that it is an appropriate or necessary means of coping with life's difficulties' "].)

Father argues that his drug use alone does not pose a risk of harm to Ashley because she "has been well-cared-for in Father's custody for over 12 years—a long enough period of time to be a good indicator of how things are likely to be in the future." We disagree, as the record shows that Ashley had not been in Father's continuous care for "over 12 years."  Although Father won sole custody when Ashley was two years old, she has continuously lived with Father in the paternal grandmother's

12

home. Ashley herself stated that she was "used to [Father] being in and out of [her] life because he used to go to jail and then come out." Additionally, Father admitted that he had used drugs regularly for the past two to three years. Of those two to three years, Father resided with Ashley for less than one year, as he lived in Mexico from 2016 until October of 2019. In light of these facts, Father appears to claim that his current drug use does not pose a substantial risk to Ashley because her paternal grandmother has taken good care of her for the majority of her life, including during his extended absences, and because Ashley has not yet been harmed by Father's drug use. This argument is disingenuous.

We therefore affirm the juvenile court's finding of jurisdiction under section 300, subdivision (b)(1), as to Father in count b-3.

## C. The Removal Order Was Proper

### 1. *Applicable Law and Standard of Review*

To remove a child from parental custody, the juvenile court must find by clear and convincing evidence that one of five grounds exists pursuant to section 361, subdivision (c). (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.) Of relevance here, "[o]ne ground for removal is that there is a substantial risk of injury to the child's physical health, safety, protection or emotional well-being if he or she were returned home, and there are no reasonable means to protect the child." (*Ibid.*, citing § 361, subd. (c)(1).)[6]

---

[6] Section 361, subdivision (c)(1) provides: "A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition

13

"A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. [Citation.] 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.)

The clear and convincing evidence standard " 'requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt.' " (*In re V.L., supra,* 54 Cal.App.5th at p. 154.) " '[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the

---

was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances . . . : (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody. . . ."

14

evidence.' " (*Id.* at p. 155 [applying the standard of review articulated in conservatorship matters to a dependency proceeding], quoting *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.)

      2.    *Discussion*

Father raises two challenges to the removal order. First, he argues that because his substance abuse was insufficient to establish jurisdiction over Ashley, it was necessarily insufficient to warrant removal. Having rejected Father's jurisdictional arguments, we find that he has not raised a cogent argument about the sufficiency of the evidence of his substance abuse. Moreover, removal is appropriate where, as here, a parent with a longstanding drug abuse problem demonstrates resistance to substance abuse treatment. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 [affirming removal order due to the mother's failure to acknowledge her longstanding drug abuse problem and "the risks to which she was exposing the minor"]; see *In re J.C.* (2014) 233 Cal.App.4th 1, 6-7 [affirming removal notwithstanding the father's participation in treatment where his treatment provider reported his participation was " 'sluggish,' " he missed two drug tests, and had a long history of substance abuse].)]

Second, Father argues that both the Department and the juvenile court failed to consider whether reasonable alternatives to removal were available to protect Ashley from his substance abuse.

Before ordering removal, the juvenile court must determine if "reasonable efforts were made to prevent or to eliminate the need for removal." (§ 361, subd. (e).) To assist the juvenile court, the Department must describe "the reasonable efforts [it] made to prevent or eliminate removal." (Cal. Rules of Court, rule

5.690(a)(1)(B)(i).) Although the juvenile court found the Department made reasonable efforts, the Department concedes it failed to report on the reasonable efforts it made to prevent removal. Thus, the trial court's ruling that the Department complied with this obligation was erroneous. (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 809.)

However, this error alone does not warrant reversal. The failure to make the required findings under section 361, subdivision (e) is deemed harmless if " 'it is not reasonably probable such finding, if made, would have been in favor of continued parental custody.' [Citations.]" (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218.)

The Department's obligation to make and report its reasonable efforts to prevent removal, as well as the juvenile court's obligation to make findings about those efforts, serve as "safeguards" against the "danger" that a department's reports "can become merely a hollow formula designed to achieve the result the agency seeks," preventing actual analysis of available protective measures. (*In re Ashly F., supra*, 225 Cal.App.4th at p. 810.) This danger is not present where, as here, substantial evidence shows that means other than removal could not have adequately protected the child.

After reviewing the evidence and arguments presented, the juvenile court found that Father "was . . . unable to fully appreciate the harm he could have caused by his own drug use with his child." This finding is supported by Father's inconsistent attitude regarding his drug use. Initially, he tried to conceal his drug use from the Department. When confronted with irrefutable evidence of recent drug use, Father admitted that he had been using drugs regularly for years and expressed a

16

willingness to "get help" to avoid losing his daughter. Three weeks later, Father tested negative for methamphetamine but positive for marijuana. Three weeks after that, Father insisted to the court that his drug use did not affect his ability to care for his daughter and resisted any requirement to participate in drug treatment programs.

This starkly contrasts with the attitude of the mother in *Ashly F.*, who expressed remorse for her abusive conduct and promptly enrolled in a parenting class. (*In re Ashly F., supra*, 225 Cal.App.4th at p. 810.) This court determined that the mother's willingness to seek out and comply with parenting services suggested that regular family maintenance services could have adequately protected the child. (*Ibid.*) Here, Father demonstrates no such willingness.

Additionally, the juvenile court in the present case considered alternative means to protect Ashley from Father's substance abuse. At the disposition hearing, Father argued that the paternal grandmother and relatives, who had only recently learned of his drug use, could protect Ashley from any threat posed by his presence in the home. The juvenile court rejected this argument. The juvenile court noted that Father's first drug test revealed he had a blood alcohol level of .04 percent in the middle of the day, even though he knew he was required to report for testing, as well as "substantial" amounts of methamphetamine and amphetamine. The juvenile court reasonably concluded that this type of substance abuse probably would be difficult to conceal from other adults in the family home, raising a concern that the other family members would not be sufficiently protective of Ashley. Accordingly, the juvenile court

reasonably rejected the proposed alternative of returning Father to the house under familial supervision.

Under these circumstances, we find it improbable that the juvenile court would have made a different decision on the question of removal, even if it had made all the factual findings required by section 361, subdivision (e). Therefore, the juvenile court's error was harmless. (*In re Celine R.* (2003) 31 Cal.4th 45, 60 ["We have interpreted [the state Constitution] as permitting reversal [under the harmless error standard] only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error. [Citation.] We believe it appropriate to apply the same test in dependency matters."].)

For these reasons, we affirm the removal order.

## DISPOSITION

The juvenile court's November 6, 2020, jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED

FEDERMAN, J.*

We concur:

ROTHSCHILD, P. J.      BENDIX, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.